232 F.3d 679 (9th Cir. 2000)
 CARY LAPIDUS; DENISE LAPIDUS, Trustees of the Cary and Denise Lapidus Living Trust, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,
v.
G. RANDALL HECHT; PAUL STEPHENS; ROBERTSON STEPHENS & COMPANY; ROBERTSON STEPHENS & COMPANY INVESTMENT MANAGEMENT, L.P.; ROBERTSON STEPHENS INVESTMENT MANAGEMENT INC., Defendants-Appellees.
 No. 99-15835
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 9, 2000
Filed November 13, 2000
 
 Joseph J. Tabacco, Jr., Berman, DeValerio, Pease & Tabacco, P.C., San Francisco, California; Jared B. Stamell, Stamell & Schager, LLP, New York, New York, for the plaintiffs appellants.
 Isabel M. Traugott and Kevin P. Muck, Brobeck, Phleger & Harrison, LLP, San Francisco, California, for the defendants appellees.
 Appeal from the United States District Court for the Northern District of California Maxine M. Chesney, District Judge, Presiding. D.C. No.CV-98-03130-MMC
 Before: David R. Thompson, Thomas G. Nelson, and Barry G. Silverman, Circuit Judges.
 THOMPSON, Circuit Judge:
 
 
 1
 Cary and Denise Lapidus, trustees of the Cary and Denise Lapidus Living Trust, appeal the district court's dismissal of their class action against the Robertson, Stephens Investment Trust[1] alleging violations of the Investment Company Act, 15 U.S.C. SS 80a-13(a)(2), 13(a)(3), and 18(f), in connection with the trust's management of a mutual fund. The plaintiffs seek to recover losses sustained by the mutual fund as a result of short sales made without shareholder approval, allegedly in violation of the registration statement filed with the Securities and Exchange Commission. The district court concluded that the plaintiffs lacked standing to bring a direct action because they did not allege an injury separate and distinct from that suffered by shareholders generally. We have jurisdiction pursuant to 28 U.S.C. S 1291. We affirm in part, reverse in part and remand.
 
 I.
 
 2
 The Robertson, Stephens Investment Trust ("trust") is a Massachusetts business trust and open-end series investment company which offers shares in eleven mutual funds. Each fund is a series of the trust. The trust is registered under the Investment Company Act of 1940, 15 U.S.C. S 80a-1. The Cary and Denise Lapidus Living Trust bought 4365.5410 shares of one of the mutual funds, The Contrarian Fund ("mutual fund"), in February 1997, and sold those shares in September 1997 at a loss of $9560.54. The plaintiffs maintain that this loss was due to short sales made by the trust in violation of restrictions set forth in the registration statement filed with the Securities and Exchange Commission ("SEC").
 
 
 3
 A short sale is a term of art used for a security trading practice in which a party "speculates that a particular stock will go down in price and seeks to profit from that drop. " Levitin v. Painewebber, Inc., 159 F.3d 698, 700 (2d Cir. 1998). Typically, the party places an order to sell a security that it does not own. In order to meet its contractual obligation, the party borrows the security from a broker. The party covers the short by subsequently purchasing an identical security and returning this identical security to the broker. If the price of the security has declined by the time of the party's purchase, the party profits from the difference between the earlier sale price and the subsequent purchase price. If the price of the security has increased by the time of the purchase, the party's loss is the amount of the price increase. See id.
 
 
 4
 The trust's January 16, 1996 prospectus filed with the SEC provided that the trust could engage in short sales of securities with a value of up to 25% of the value of the mutual fund's total assets. The trust's supplement to its April 1, 1997 prospectus, filed with the SEC on May 5, 1997, authorized the trust to enter into short sales of securities with a value of up to 40% of the mutual fund's total assets. This amendment of the short sales restriction was made without shareholder approval. By the end of 1997, the mutual fund's short sale position had increased to 25-35% of the mutual fund's assets and the mutual fund suffered substantial losses.
 
 
 5
 The plaintiffs filed this action, on behalf of themselves and other shareholders similarly situated, alleging violations of the Investment Company Act ("ICA").[2] Specifically, the plaintiffs alleged that the defendants violated: (1) S 80a-13(a)(3) of the ICA by deviating from the restriction on short sales without shareholder approval; (2) S 80a-13(a)(2) of the ICA by issuing senior securities without shareholder approval; and (3) S 80a-18(f) of the ICA by issuing senior securities.[3]
 
 
 6
 Section 80a-8 of the ICA requires an investment company to list in its registration statement all investment policies which are changeable only if authorized by shareholder vote, as well as all policies that the registrant deems matters of fundamental policy. See 15 U.S.C. S 80a-8(b)(2) and (3). Aninvestment company is prohibited by section 80a-13 from deviating from any of these policies "unless authorized by the vote of a majority of its outstanding voting securities." 15 U.S.C. S 80a-13(a). The parties dispute whether the short sale and senior security restrictions in the trust's registration statement were policies changeable only upon shareholder approval. The district court did not reach this question because it dismissed the action under Fed. R. Civ. P. 12(b)(6) for lack of subject matter jurisdiction. The district court concluded that the plaintiffs' claims were derivative claims and that the plaintiffs lacked standing to bring them in a direct action because they did not allege an injury separate and distinct from any injury suffered by all fund shareholders.[4] This appeal followed.
 
 II.
 
 7
 We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6). See Kelson v. City of Springfield, 767 F.2d 651, 653 (9th Cir. 1985). We must accept as true all material allegations in the complaint and construe the complaint in the light most favorable to the plaintiffs. See id. We may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. " Branch v.Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).
 
 III.
 
 8
 As a preliminary matter, the plaintiffs contend the district court erred in applying state law to determine whether their claims were direct or derivative. The plaintiffs argue that the district court was required to look to the language of the ICA to determine whether their claims were direct or derivative, without resorting to state law to supplement its analysis. We disagree.
 
 
 9
 In Burks v. Lasker, 441 U.S. 471 (1979), shareholders in an investment company brought a derivative action alleging that the company's directors had violated their duties under the ICA. Although the action was brought under a federal statute, the Court determined that state corporation law should be applied to determine whether the company's directors had the power to terminate a shareholder derivative action brought under the ICA. The Court explained that "Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute" and that "the first place one must look to determine the powers of corporate directors is in the relevant State's corporation law." Id. at 478.
 
 
 10
 In another case brought under the ICA, Kamen v. KemperFin. Servs., Inc., 500 U.S. 90 (1991), the Court held that a court entertaining a shareholder derivative action under the ICA must apply the demand futility exception as it is defined by the law of the state of incorporation. The Court stated that "[t]he presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards. . . . Corporation law is one such area." Id. at 98. The Court concluded that gaps in the ICA "bearing on the allocation of governing power within the corporation should be filled with state law" unless the state law permits action that the federal law prohibits or unless the application of the state law would be inconsistent with underlying federal policy. Id. at 99.
 
 
 11
 While neither Burks or Kamen addressed whether courts should apply state law to determine whether a claim brought under the ICA is direct or derivative, other courts interpreting Burks and Kamen have held that state law should apply. See, e.g., Boland v. Engle, 113 F.3d 706, 715 (7th Cir. 1997) (stating that federal courts should apply state corporation law in determining whether a claim under the ICA is direct or derivative); Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 489 (N.D. Ill. 1999) (citing Kamen for the proposition that federal courts should generally look to the corporation law of the state where an investment company is incorporated); Strougo v. Scudder, Stevens & Clark, Inc., 964 F. Supp. 783, 790 (S.D.N.Y. 1997) ("To determine whether a claim brought under the ICA is direct or derivative, a court must look to the law of the state in which the fund was incorporated."). We find these cases persuasive and therefore rely upon state law to determine whether the plaintiffs' claims are direct or derivative. We apply Massachusetts law because the trust was organized under the laws of Massachusetts. See Boland, 113 F.3d at 715; Green, 186 F.R.D. at 489.
 
 IV.
 
 12
 To bring a direct action under Massachusetts law, a plaintiff must allege an injury distinct from that suffered by shareholders generally or a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote. See Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 351 (Del. 1988); Lipton v. News Int'l, 514 A.2d 1075, 1078 (Del. 1986); Sarin v. Ochsner, 721 N.E.2d 932, 934 (Mass. App. Ct. 2000) (applying Delaware law to determine whether claims were direct or derivative). In the present case, the plaintiffs allege violations of their contractual rights as shareholders to vote on proposed changes to the short sale and senior security restrictions spelled out in the registration statement filed with the SEC. These allegations are sufficient to satisfy the injury requirement for a direct action under Massachusetts law. Under the plain language of the injury test, which is written in the disjunctive, it is unnecessary to allege an injury distinct from that suffered by shareholders generally if the alleged injury is predicated upon a violation of a shareholder's voting rights. See Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996) ("That many investors might have been misled, as the plaintiff was, or that the plaintiff might only be minimally injured, does not convert the claim to a derivative one. The claim remains a direct one for wrongs to individual investors rather than to the corporate entity."); Margolies v. Pope & Talbot, Inc., 12 Del. J. Corp. L. 1092, 1103 (Del. Ch. 1986) (mem. op.) ("Under the rules announced in . . . Lipton, the plaintiff may bring an individual action or a class action in order to protect his and the voting rights of the members of the class rather than bring a stockholder derivative action."); see also Yamamoto v. Omiya, 564 F.2d 1319, 1326 (9th Cir. 1977) (concluding that the district court improperly denied class certification to a direct action alleging denial of shareholders' interest in "fair corporate suffrage"). Accordingly, the plaintiffs have standing to bring their voting rights claims as direct claims under sections 80a13(a)(2) and (3) of the ICA.
 
 V.
 
 13
 Unlike plaintiffs' claims under sections 80a-13(a)(2) and (3), their direct claim under section 80a-18(f) is not based on an injury to their voting rights. The plaintiffs argue that their injury under section 80a-18(f) is separate and distinct from that suffered by shareholders generally because only shareholders in the series corresponding to the fund were affected, not shareholders in series corresponding to other funds in the trust. We disagree.
 
 
 14
 A shareholder does not acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares. See Elster v. American Airlines, Inc., 100 A.2d 219, 222 (Del. Ch. 1953). While it is true that only shareholders in the series corresponding to the fund, and not shareholders in the other ten series, were affected by the allegedly improper issuance of senior securities, an injury caused simply by the alleged issuance of senior securities unconnected to any violation of voting rights would be an injury to the trust generally. Therefore, any harm to the fund-series shareholders arising from such an issuance of securities would be only indirect. See id. "If the cause of action is based on unlawful acts . . . relating to the capital stock as an entirety, or a particular class of stock, it is ordinarily a corporate cause of action and cannot be the basis for an action by a shareholder merely as an individual." 12B William M. Fletcher, Fletcher Cyclopedia of Corporations S 5915 (perm. ed. 1993) (emphasis added). We conclude the district court properly held that the plaintiffs lacked standing to bring the claim they alleged under 15 U.S.C. S 80a-18(f) as a direct claim against the defendants.
 
 VI.
 
 15
 In sum, we reverse the district court's dismissal of the plaintiffs' action for lack of subject matter jurisdiction. The plaintiffs have standing to bring, as a direct action, their claims for the alleged violation of their voting rights under sections 80a-13(a)(2) and (3) of the ICA. We affirm, however, the district court's dismissal of the plaintiffs' claim asserted under section 80a-18(f). The district court correctly determined that this claim alleged only indirect harm to the shareholders. The district court did not rule on the additional grounds for dismissal asserted by the defendants. We decline to consider those grounds because at this stage of the litigation their resolution may involve factual questions, and in any event they are best left for determination in the first instance by the district court.
 
 
 16
 AFFIRMED in part; REVERSED in part; and REMANDED.
 
 
 17
 Each party shall bear its own costs.
 
 
 
 Notes:
 
 
 [1]
 The defendants are the trust, the trust's investment advisers, the trust's principal underwriter, the trust's portfolio manager, and a trustee of the trust.
 
 
 [2]
 The plaintiffs alleged additional claims that are not the subject of this appeal.
 
 
 [3]
 Under section 18(f), a fund generally is prohibited from issuing senior securities, except that a fund may borrow from a bank if it maintains 300% asset coverage for all such borrowings. A senior security is defined in the Investment Company Act as "any bond, debenture, note, or similar obligation or instrument constituting a security and evidencing indebtedness." 15 U.S.C. S 80a-18(g). Plaintiffs allege that a short sale involves the creation of a senior security because the obligation to repurchase securities sold short creates investment leverage that poses a risk of loss similar to the leverage created by borrowing from a bank.
 
 
 [4]
 The United States Supreme Court has expressly declined to address whether there exists an implied private right of action under the ICA. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 97 n.4 (1991); Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979). However, because the "question whether a cause of action exists is not a question of jurisdiction," it "may be assumed without being decided." Burks, 441 U.S. at 476 n.5.