**In re: AT HOME CORPORATION, a Delaware Corporation, Debtor,**

**San Mateo Plaintiffs, Appellant,**

v.

**At Home Corporation, dba Excite at Home; Bondholders Liquidating Trust, as successor to the Statutory Bondholders' Committee; Comcast Corporation; AT & T Corporation, Appellees.**

No. 03–17085.

D.C. No. 02–04767–JSW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 2005.

Decided Nov. 23, 2005.

Jules Brody, Esq., Stull, Stull & Brody, New York, NY, Timothy J. Burke, Esq., Stull Stull & Brody, Los Angeles, CA, for Debtor/Plaintiffs/Appellant.

Richard W. Slack, Esq., Joseph S. Allerhand, Esq., Weil, Gotshall and Manges, LLP, Karen E. Wagner, Esq., Davis, Polk & Wardwell, New York, NY, Suzzanne Uhland, Esq., Brian M. Metcalf, Esq., O'Melveny & Myers, Los Angeles, CA, William P. Weintraub, Esq., Maxim B. Litvak, Esq., Pachulski, Stang, Ziehl, Young & Jones P.C., David H. Fallek, Christopher B. Hockett, Esq., Kevin Fitzgerald, Esq., Bingham McCutchen, LLP, Charles B. Cohler, Esq., Lasky, Haas & Cohler, San Francisco, CA, for Appellees.

Before: NOONAN, RYMER, and GOULD, Circuit Judges.

## MEMORANDUM *

Appellants, minority shareholders of At Home Corporation ("At Home"), filed shareholder suits in state court against At Home and its controlling shareholders, AT & T Corporation ("AT & T"), Cox Communications, Inc. ("Cox"), and Comcast Corporation ("Comcast").[1] The minority shareholders challenged the transaction entered into on March 28, 2000 whereby AT & T consolidated its control over At Home by buying out the interests of Cox and Comcast. After At Home filed for Chapter 11 bankruptcy, Appellee Bondholders' Liquidating Trust, who represented some of At Home's creditors, asked the bankruptcy court to enjoin the prosecution of these state court actions because the suits were derivative claims that belonged to the estate of At Home. After allowing Appellants an opportunity to amend their complaint to remove the derivative claims, the bankruptcy court ruled that Appellants' proposed amended complaint still contained precluded derivative claims and, alternatively, that any remaining direct claims were enjoined because they would interfere with the Bondholders' Liquidating Trust's pending derivative suit on behalf of the estate against the controlling

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. Because the facts are familiar to the parties, we do not recite them here except as necessary to clarify our decision.

shareholders. The district court affirmed the bankruptcy court's order. We have jurisdiction under 28 U.S.C. § 158(d) to review the final order of a district court acting in its bankruptcy appellate capacity. We hold that Appellants have not alleged a valid direct claim, and we affirm the district court's order.[2]

The bankruptcy estate of At Home Corporation includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A bankruptcy court may enjoin a derivative claim brought by shareholders because the claim is the property of the bankrupt estate. *See* 11 U.S.C. § 362(a)(3). Because At Home is a Delaware corporation, the scope of the debtor's property is determined by Delaware law. *See Lapidus v. Hecht,* 232 F.3d 679, 682 (9th Cir.2000).

The determination of whether a claim is direct or derivative under Delaware law depends on the following factors: "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1035 (Del.2004). "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Id.* The existence of a fiduciary relationship between the majority and minority shareholders does not excuse the need for independent and direct harm to the minority shareholders. *See In re*

*Tri–Star Pictures,* 634 A.2d 319, 330 (Del. 1993).

Appellants' proposed complaint asserted three alleged wrongs from the March 2000 transaction: The exchange by AT & T of 50 million shares of Series A stock for 50 million shares of Series B stock, the payment of a control premium for the release of control by Cox and Comcast, and misleading disclosures in the proxy statement before the shareholder vote approving the corporate amendments from the transaction. We conclude that these actions did not directly harm any rights held independently by the minority shareholders.

▇ Appellants cannot show a direct impairment of their rights as shareholders from AT & T's exchange of Series A common stock for Series B stock, which increased AT & T's total voting power over At Home from 55% to 74%.[3] Appellants do not allege that this exchange decreased the cash value of their shares independently of any overall decrease of At Home's stock price. *See Malone v. Brincat,* 722 A.2d 5, 14 (Del.1998). Also, a valid direct claim for voting dilution would require that the controlling shareholders' actions wrongfully stripped the minority of some voting power that the minority had before the transaction. *See Tri–Star,* 634 A.2d at 332; *Behrens v. Aerial Communications Inc.,* 2001 WL 599870, at *5 (Del.Ch.2001). Even before the share exchange, AT & T could approve the corporate amendments from the March 2000 transaction by voting

---

**2.** We review de novo the decision of a district court which has acted as an appellate court in reviewing a bankruptcy court's decision on appeal. *See Feder v. Lazar,* 83 F.3d 306, 308 (9th Cir.1996). We apply the same standard of review as the district court applied to the bankruptcy court's decision: findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo. *See id.* We review de novo the legal conclusion by the bankruptcy court that Ap-

pellants' proposed complaint contained causes of action that belonged to the estate of At Home. *In re Kim,* 257 B.R. 680, 684 (9th Cir.BAP2000).

**3.** Each share of Series B stock had the voting power of ten shares of Series A stock. Only AT & T held any shares of Series B common stock.

its own shares without any additional outside votes because AT & T had the required majority of voting power for both the Series B shares and for all outstanding common stock. The minority shareholders could not exercise any influential voting power before the March 2000 transaction, and, therefore, their voting power was already "diluted to the point of virtual oblivion." *See Tri–Star*, 634 A.2d at 332.

■ In addition, the entitlement to a control premium would require a shift of control from the public shareholders to a majority shareholder or a cohesive group of controlling shareholders. *See Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34, 42 (Del.1994). In the March 2000 transaction, Cox and Comcast agreed to release their veto authority over any action taken by At Home's board of directors. In return, AT & T granted a "put" option to Cox and Comcast in which AT & T agreed to purchase all of their At Home stock at a specified price above market value. Cox and Comcast could also purchase parts of At Home's delivery system and could terminate early their exclusive relationship with At Home. While the transaction involved a release of power by Cox and Comcast, Appellants did not exercise any privileges of control over At Home before the transaction to entitle them to a share of the premium given to Cox and Comcast. Because AT & T, Cox, and Comcast allegedly manipulated the corporate governance procedures of At Home to complete this transaction, any damage to the minority shareholders from this manipulation flows through the harm done to the At Home corporation and is properly considered to be a derivative harm.

■ Finally, any misleading disclosures that wrongfully persuaded the minority shareholders to vote in favor of the March 2000 transaction did not, by themselves, create grounds for a direct claim. "Damages will be available only in circumstances where disclosure violations are concomitant with deprivation to stockholders' economic interests or impairment of their voting rights." *Loudon v. Archer–Daniels–Midland Co.*, 700 A.2d 135, 146 –147 (Del. 1997). The minority shareholders were not deprived of any economic interests or voting rights independent of the corporation's rights.

Any harm to the minority shareholders from the March 2000 transaction resulted from the injury imposed on At Home itself from the collective control and manipulation of AT & T, Cox, and Comcast.[4] *See Agostino v. Hicks*, 845 A.2d 1110, 1124 (Del.Ch.2004). Therefore, Appellants' proposed complaint did not state a valid direct claim and was properly enjoined by the bankruptcy court.[5]

For the reasons stated, the district court's order affirming the injunction of Appellants' claims is AFFIRMED.

---

**4.** Appellants briefly refer in their opening brief to a cause of action under state law for "persons wrongfully induced by misrepresentations to hold stock instead of selling it." *See Small v. Fritz Companies. Inc.*, 30 Cal.4th 167, 170, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (Cal.2003). Although this cause of action may state a valid direct claim, the Proposed Amended Complaint contains no allegations supporting this claim and we do not address it here.

**5.** Because we hold that Appellants have not alleged a valid direct claim, we need not discuss the bankruptcy court's alternative holding that it may enjoin any direct claims that interfere with the pending derivative lawsuits brought by the Defendant Bondholders on behalf of the estate of At Home Corporation.