906 A.2d 766 (2006)
In re J.P. MORGAN CHASE & CO. SHAREHOLDER LITIGATION,
Bruce T. Taylor, as custodian for Julia Ann Taylor, Ronda Robins and George Ziegler, Plaintiffs Below, Appellants,
v.
William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co., Defendants Below, Appellees.
No. 218, 2005.
Supreme Court of Delaware.
Submitted: December 12, 2005.
Decided: March 8, 2006.
Seth D. Rigrodsky (argued), Ralph N. Sianni and Brian D. Long, Esquires, of Milberg Weiss Bershad & Schulman LLP, Wilmington, Delaware; Steven G. Schulman, Richard Weiss and Laura Gundersheim, Esquires, of Milberg Weiss Bershad & Schulman LLP, New York, New York; Of Counsel: Peter D. Bull, Esquire, of Bull & Lifshitz, LLP, New York, New York; for Appellants.
Jesse A. Finkelstein, Michael R. Robinson and Lisa Z. Brown, Esquires, of Richards, Layton & Finger, Wilmington, Delaware; Of Counsel: Michael A. Cooper (argued), Sharon L. Nelles and Keith Levenberg, Esquires, of Sullivan & Cromwell LLP, New York, New York; Nancy E. Schwarzkopf, Esquire, of JP Morgan Chase, New York, New York; for Appellee Harrison.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.
*768 JACOBS, Justice.
The plaintiffs, who are stockholders of J.P. Morgan Chase & Co. ("JPMC"), brought this purported class action for money damages in the Court of Chancery, challenging a merger in which JPMC acquired Bank One Corporation ("Bank One") in July 2004. The plaintiffs claimed that the JPMC directors had breached their fiduciary duties by: (1) approving a merger exchange ratio that paid an unnecessary and excessive premium to Bank One stockholders, and (2) inducing JPMC shareholders to approve the merger with a proxy statement that contained materially inaccurate or incomplete disclosures. The Court of Chancery dismissed the overpayment claim under Rule 23.1, on the ground that the claim was derivative and the plaintiffs had not excused their failure make a pre-suit demand. The Court dismissed the proxy disclosure claim under Rule 12(b)(6), on the ground that the complaint did not state a cognizable claim for money damages, which was the only remedy being sought.
The plaintiffs have appealed from the judgment of dismissal, but only as to their proxy disclosure claim, and only against director defendant William B. Harrison, as the sole appellee. We conclude, for the reasons that follow, that in dismissing that claim the Court of Chancery correctly applied Delaware law.[1] Accordingly, we affirm.

FACTS[2]
In January 2004, JPMC and Bank One jointly announced a stock-for-stock merger, which had been unanimously approved by their respective boards of directors. Under the merger agreement, JPMC would issue common shares to Bank One stockholders at a premium of 14% over the closing price of Bank One common stock on the date of the merger announcement.
The merger agreement also prescribed the post-merger succession plan for JPMC senior management. Following the merger, the CEO of JPMC, William B. Harrison, Jr., would continue as CEO for two years, after which James Dimon, the CEO of Bank One, would succeed Harrison. *769 During the interim two-year period, Dimon would serve as President and Chief Operating Officer. After the two-year period, Harrison, who was Chairman of JPMC before the merger, would continue as Chairman.
The Joint Proxy Statement filed with the Securities and Exchange Commission in February 2004 listed various reasons for the merger, which was expected to create the second largest financial institution in the country, measured by total assets. In May 2004, the JPMC stockholders overwhelmingly approved the merger, with over 99% of the votes cast in favor. The merger closed on July 1, 2004.
What prompted this litigation was an article that described the preliminary negotiations between Harrison and Dimon. That article appeared in The New York Times on June 27, 2004, only days before the merger closed. According to the article, Dimon reportedly offered to sell Bank One to JPMC at no premium if he were appointed CEO of the merged entity immediately after the merger closed. The critical sentence in the article stated: "Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become the chief executive immediately, according to two people close to the deal."
Based on that one sentence, the plaintiffs alleged in their complaint that JPMC could have purchased Bank One for no premium if JPMC agreed to appoint Dimon CEO. By allowing Harrison to keep the title of CEO for two more years (the plaintiffs alleged), the board of JPMC caused JPMC to overpay for Bank One to the extent of the 14% exchange ratio premium. The plaintiffs claimed that the shareholder class[3] was entitled to recover money damages equal to the dollar value of that premiumapproximately $7 billion. The plaintiffs' position was that by approving the premium and obtaining shareholder approval through a materially misleading proxy statement (that is, by not disclosing the information about Dimon's alleged offer to Harrison), the JPMC directors breached their fiduciary duties, including their duty of disclosure, owed to the shareholders of JPMC.

THE COURT OF CHANCERY OPINION
As earlier noted, the Court of Chancery dismissed the complaint in its entirety. The Vice Chancellor dismissed the underlying claimthat the board had breached its fiduciary duty by approving the 14% merger premiumbecause that claim was derivative, and the plaintiffs had not excused their failure to make a pre-derivative suit demand on the JPMC board under Court of Chancery Rule 23.1.[4] Applying the test announced in Tooley v. Donaldson, Lufkin & Jenrette, Inc.,[5] the Vice Chancellor held that to plead a direct (non-derivative) injury, a "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without *770 showing an injury to the corporation."[6] The plaintiffs argued that the shareholder class was harmed individually and directly, because their stock interest in the merged entity had been diluted to the extent of the merger premium. Rejecting that argument, the Court of Chancery concluded that dilution always occurs in a stock-for-stock merger, and that stripped of embellishments, the plaintiffs' claim was simply that JPMC was caused to overpay for Bank One. That, the Vice Chancellor held, would be a classic derivative claim if JPMC had paid cash, and the result should be no different where, as occurred here, the merger consideration was stock.[7]
The Court of Chancery also concluded that the plaintiffs' proxy disclosure claim for damages was not legally cognizable under Rule 12(b)(6). The Vice Chancellor observed that although the disclosure allegations could have supported a claim for injunctive or other equitable relief, no injunctive relief was ever sought and equitable remedies were no longer practicable. Nor did the complaint state a cognizable disclosure claim for money damages, the Court found, because the complaint did not allege any compensable harm to the class. As the Vice Chancellor stated, because "the damages allegedly flowing from the disclosure violation are exactly the same as those suffered by JPMC in the underlying claim[,].... the injury alleged in the complaint is properly regarded as injury to the corporation, not to the class."[8] Therefore, "the claim for actual damages, if there is one, belongs to the corporation and can only be pursued by the corporation, directly or derivatively."[9]
The plaintiffs argued that a violation of the duty of disclosure, without more, automatically entitles the affected shareholders to a damages recovery. Rejecting that contention, the Court of Chancery held:
[T]he plaintiffs try to rely on Tri-Star[10] for the rule that there is a "per se rule of damages for breach of the fiduciary duty of disclosure."[11] This is no longer an accurate statement of Delaware law. Loudon limited Tri-Star to its facts, holding that "Tri-Star stands only for the narrow proposition that where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages." [footnote omitted] For reasons already discussed, the complaint in this case does not properly allege any impairment to the economic or voting interests of the class of JPMC stockholders. The only economic injury the plaintiffs claim to have suffered is the loss of the opportunity for JPMC to have acquired Bank One on more favorable terms. That injury, if there is one, is to the corporation. Moreover, JPMC stockholders' voting rights were unaffected by the merger. Although there are now more JPMC shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, the sort of "injury to *771 voting interests" described in Tri-Star is absent.[12]

THE CONTENTIONS AND ISSUES ON APPEAL
As noted, the plaintiffs appeal only from the Court of Chancery's dismissal of their proxy disclosure claim, and only with respect to Mr. Harrison. They do not challenge the Vice Chancellor's determinations that plaintiffs' underlying breach of fiduciary duty claim was derivative, or that the majority of the JPMC board were independent and disinterested, or that the board's approval of the merger agreement, including its premium and succession provisions, was protected by the business judgment rule. The only claim presented to us is that the Court of Chancery reversibly erred by dismissing the proxy disclosure claim, because assuming the truth of plaintiffs' well-pled disclosure-related allegations, the plaintiffs were entitled to recover compensatory damages, or at the very least nominal damages, as a matter of law. In response, the appellee contends that even if the directors were found to have violated their duty of disclosure, that violation does not give rise to any legally cognizable claim for damages, whether compensatory or nominal, based on the facts alleged in the complaint.
Thus, the issues we must decide are whether the Court of Chancery correctly determined that the alleged duty of disclosure violation fails to state a legally sufficient claim for either (1) compensatory or (2) nominal damages. Because those two types of damage claims rest on different theories that require separate analyses, we address each claim separately.

THE PLAINTIFFS' CLAIMED ENTITLEMENT TO RECOVER COMPENSATORY DAMAGES
To understand the plaintiffs' argument that their complaint states a cognizable claim of entitlement to compensatory damages, some background is helpful. In the Court of Chancery, the plaintiffs contended that the defendants' violation of their fiduciary duty of disclosure entitled the shareholder class to recover compensatory damages equal to the $7 billion premium that (plaintiffs allege) the defendants wrongfully caused JPMC to overpay for Bank One. The Vice Chancellor held that the alleged compensatory damages, as thus measured, flowed only from the underlying claim of wastea claim that was derivative, not direct. Applying the Tooley v. Donaldson standard for determining whether a claim is direct or derivative, the Court of Chancery held that only the corporation (JPMC) would have suffered the alleged harm from the overpayment, and only the corporation would receive the benefit of any damages recovery.[13] Because claims of waste are classically derivative, the Vice Chancellor's conclusion is correct.[14]
The plaintiffs do not challenge that determination on appeal. What they contend, however, is that the compensatory damages to which they are entitled as a *772 consequence of the proxy disclosure violation are identical to the damages that would flow to JPMC as a consequence of JPMC's underlying derivative waste claim. That is, the $7 billion value of the premium paid by JPMC is the measure of the damages for the separate harms occasioned both to the corporation and to the shareholder class, respectively, by the defendants' two distinct fiduciary violations. The Vice Chancellor was not persuaded by this argument, and neither are we. To the extent the plaintiffs' claim is that the compensatory damages worth $7 billion flow from the disclosure violation, that damages claim is derivative, not direct. Even if it were assumed that improper proxy disclosures induced JPMC's shareholders to approve the merger (including the $7 billion overpayment), the harm resulting from the overpayment was to JPMC. Therefore, any damages recovery would flow only to JPMC, not to the shareholder class.
The plaintiffs contend that their disclosure claim is direct, that their claim supports a compensatory damages recovery by the class, and that the Court of Chancery erred in holding otherwise. The plaintiffs argue that "Delaware decisions do not mandate that direct claims must have damages independent of those which would be sought in a derivative suit.... Instead, it is the injury suffered that must be distinct."[15] The plaintiffs urge that the issuance of $7 billion worth of JPMC shares to former Bank One stockholders resulted in a dilution of the proportionate economic value and voting power of the shares owned by all pre-merger JPMC shareholders. Therefore, plaintiffs argue, their proxy disclosure claim is a direct claim that would entitle the JPMC shareholder class to recover compensatory damages in the amount of $7 billion.
That argument conflates three different issues: (i) whether the proxy disclosure claim is direct, (ii) whether that disclosure claim, if valid, would entitle the plaintiffs to recover compensatory damages, and (iii) if so, how those compensatory damages should be measured. The first two of those "issues" do not involve matters that are in dispute. This Court has recognized, as did the Court of Chancery, that where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct.[16] But that proposition leaves unanswered the second question: what relief flows from the disclosure violation? As to that issue, it is also undisputed, and the Court of Chancery recognized, that a duty of disclosure violation may entitle the injured party to compensatory damages in appropriate circumstances. But, that does not answer the third question, which is whether those circumstances are alleged in this specific complaint.
The plaintiffs argue that their complaint alleges circumstances that trigger their entitlement to a compensatory damages recovery. To construct that argument, however, plaintiffs must resort to conflating (i) their direct claim for liability for a disclosure violation, with (ii) the corporation's entitlement to recover compensatory damages as a consequence of the corporation's quite separate (underlying) claim for waste. To say it differently, what the plaintiffs are claimingimplicitly but not straightforwardlyis that where a disclosure violation arises from a corporate transaction in which the shareholders suffer a dilution of the economic and voting power of their shares, the shareholders automatically become entitled to recover *773 the identical damages on their disclosure claim, that the corporation would be entitled to recover on its underlying (derivative) claim.
That argument is flawed for two reasons. First, it ignores the fundamental principle governing entitlement to compensatory damages, which is that the damages must be logically and reasonably related to the harm or injury for which compensation is being awarded.[17] Plaintiffs have pled no facts from which $7 billionor for that matter any quantifiable amountcan be inferred from the claimed infringement of their right to be told the material facts relating to the merger on which they were asked to vote. Although the $7 billion damage figure would be a logical and reasonable consequence (and measure) of the harm caused to JPMC for being caused to overpay for Bank One, that $7 billion figure has no logical or reasonable relationship to the harm caused to the shareholders individually for being deprived of their right to cast an informed vote. Indeed, as the Vice Chancellor observed, if the plaintiffs' damages theory is valid, the directors of an acquiring corporation would be liable to pay both the corporation and its shareholders the same compensatory damages for the same injury.[18] That simply cannot be.
Second, the plaintiffs cite no authority that validates conflating their individual direct claim of liability for a duty of disclosure violation with the compensatory damages flowing from the corporation's separate and distinct underlying derivative claim for waste. The plaintiffs rely upon In re Tri-Star Pictures, Inc., for the proposition that shareholders may recover compensatory damages where a corporate transaction that caused impairment to their economic or voting rights, is accomplished by means of the directors' breach of their duties of disclosure. But Tri-Star does not help the plaintiffs here. This Court has previously held, and the Vice Chancellor correctly observed, that "Tri-Star stands only for the narrow proposition that where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages."[19] The claim being addressed at this point, however, is for compensatory, not nominal, damages. *774 Tri-Star does not speak to the plaintiffs' claim for compensatory damages in this case.
We conclude, for these reasons, the Court of Chancery did not err in dismissing the plaintiffs' proxy disclosure claim insofar as it is the predicate for their claim for compensatory damages.

THE PLAINTIFFS' ALTERNATIVE CLAIM OF ENTITLEMENT TO NOMINAL DAMAGES
The plaintiffs also claim, in the alternative, that the Court of Chancery erred in dismissing their proxy disclosure claim, because if that claim were validated, it would entitle the shareholders to recover, at the very least, nominal damages. The plaintiffs rely on Tri-Star for the rule that there is "a per se rule of damages for breach of the fiduciary duty of disclosure."[20] The Court of Chancery held, correctly in our view, that that is "no longer an accurate statement of Delaware law."[21]
In Loudon v. Archer-Daniels-Midland Company,[22] this Court stated:
We hold that under Delaware law there is no per se rule that would allow damages for all director breaches of the fiduciary duty of disclosure. The dictum in Tri-Star is confined to the facts of that case. Damages will be available only in circumstances where disclosure violations are concomitant with deprivation to stockholders' economic interests or impairment of their voting rights.[23]
Thus, the plaintiffs' entitlement to seek nominal damages depends upon whether their complaint alleges the type of deprivation of the JPMC stockholders' economic interests or impairment of their voting rights, that would be cognizable under Tri-Star, as limited by Loudon. The Vice Chancellor concluded that the complaint alleged no such impairment or deprivation:
For reasons already discussed, the complaint in this case does not properly allege any impairment to the economic or voting interests of the class of JPMC stockholders. The only economic injury the plaintiffs claim to have suffered is the loss of the opportunity for JPMC to have acquired Bank One on more favorable terms. That injury, if there is one, is to the corporation. Moreover, JPMC stockholders' voting rights were unaffected by the merger. Although there are now more JPMC shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, the sort of "injury to voting interests" described in Tri-Star is absent.[24]
That ruling is consistent with several post-Loudon Court of Chancery decisions that have interpreted Tri-Star to hold that dilution claims are individual in nature only where a significant stockholder's interest is increased at the sole expense of the minority.[25]A fortiori, those decisions view Tri-Star as having "no application... where the entity benefiting from the *775 allegedly diluting transaction ... is a third party rather than an existing significant or controlling stockholder."[26] Those decisions state accurately the narrow scope of Tri-Star, as limited by Loudon.
In this case, the merger between JPMC and Bank One was not a transaction between a corporation and its controlling (or even a significant) stockholder. Rather, the merger was a transaction between two independent entities. Because the entity allegedly benefiting from the dilution (Bank One) was not a significant or controlling stockholder of JPMC, Tri-Star has no application to the facts alleged here.
The plaintiffs contend that even if Tri-Star's nominal damages rule was limited by Loudon, the Loudon limitation itself was undone by this Court's later decision in Malone v. Brincat.[27] For support, plaintiffs rely upon the following sentence from Malone, and also upon a footnote to that sentence:
An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages.[28]
In footnote 27 to the above-quoted sentence, the Malone Court cited Loudon, and summarized Loudon's relevant holding in a parenthetical, as follows:
("where directors have breached their disclosure duties in a corporate transaction... there must at least be an award of nominal damages.")[29]
Plaintiffs argue that the above-quoted text and explanatory footnote from Malone establish there is no longer a Loudon-created limitation upon the scope of Tri-Star's rule of "virtual per se entitlement to nominal damages" for any violation of the duty of disclosure. As additional support, the plaintiffs point to O'Reilly v. Transworld Healthcare, Inc.,[30] a decision in which the Court of Chancery interpreted Malone as having the effect of undoing the Loudon limitation.[31]
The Vice Chancellor rejected the plaintiffs' reading of Malone, as do we. Footnote 27 of Malone, upon which the plaintiffs rely, quoted selectively from Loudon, but omitted language from the Loudon opinion that (with the benefit of perfect hindsight) should have been included. Had the quotation from Loudon in Malone been reproduced in full text, any arguable basis for plaintiffs' interpretation of Malone *776 would disappear. In full text, footnote 27 would have read as follows:
Therefore, Tri-Star stands only for the narrow proposition that, where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages. Tri-Star should not be read to stand for any broader proposition.[32]
Nothing in our decision in Malone v. Brincat was intended, or should be read, to undo the limitation, articulated in Loudon, of the circumstances where nominal damages will be recoverable as a consequence of an adjudicated violation of the fiduciary duty of disclosure.[33] Because the complaint does not plead facts that would make the nominal damages rule of Tri-Star applicable, it follows that nominal damages are not recoverable even if the plaintiffs were to prevail on their proxy disclosure claim. Because money damages were the only relief sought in the complaint, the proxy disclosure claim was properly dismissed.

CONCLUSION
For the foregoing reasons, the Court of Chancery committed no error in dismissing the proxy disclosure claim alleged in the complaint. The judgment of the Court of Chancery dismissing this action is, therefore, affirmed.
NOTES
[1] In re J.P. Morgan Chase & Co. S'holder Litig., 2005 WL 1076069 (Del.Ch. Apr. 29, 2005); 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005).
[2] Because this appeal is from the dismissal of a complaint, all facts herein are taken from the well-pleaded allegations of the complaint, except where otherwise noted. In re Tri-Star Pictures, Inc., 634 A.2d 319, 326 (Del.1993).
[3] The class is alleged to consist of all persons who owned JPMC stock on January 14, 2004 (the day the merger was announced) and who continued to own such stock through July 1, 2004 (the date the merger closed).
[4] The Court concluded that the plaintiffs had not excused their failure to make a pre-suit demand on the board because: (i) all eleven outside directors of JPMC's twelve member board were independent and disinterested; (ii) no facts were alleged that called into question those directors' honesty and good faith, or the adequacy of their information; and (iii) the decision of the board to approve the merger agreement was therefore entitled to the protection of the business judgment rule.
[5] 845 A.2d 1031 (Del.2004).
[6] Id. at 1039.
[7] In re J.P. Morgan Chase & Co., 2005 WL 1076069, at *6.
[8] Id. at *12.
[9] Id.
[10] In re Tri-Star Pictures, Inc., 634 A.2d 319 (Del.1993) [footnote in original].
[11] Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 141 (Del.1997) [footnote in original].
[12] In re J.P. Morgan Chase & Co., 2005 WL 1076069, at *13 (citing Tri-Star, 634 A.2d at 332 ("[T]he power of Tri-Star's minority shareholders to oppose the [later] merger was diluted to the point of virtual oblivion.")).
[13] Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del.2004) (holding that the standard for assessing whether a claim is direct or derivative must turn "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?").
[14] Tri-Star, 634 A.2d at 330.
[15] Appellant's Reply Br. at 1 [emphasis in original].
[16] Tri-Star, 634 A.2d at 330, n. 12, and 332.
[17] Jardel Co. v. Hughes, 523 A.2d 518, 528 (Del.1987) ("The object and purpose of an award of compensatory damages in a civil case is to impose satisfaction for an injury done ... with the size of award directly related to the harm caused by the defendant."); Henne v. Balick, 146 A.2d 394, 396 (Del.1958) ("There must be some reasonable basis upon which a jury may estimate with a fair degree of certainty the [plaintiff's loss] in order to enable [the jury] to make an intelligent determination of the extent of this loss. The burden is upon the plaintiff to furnish such proof.") [internal citation omitted]; Strassburger v. Earley, 752 A.2d 557, 579 (Del.Ch.2000) ("The traditional measure of damages is that which is utilized in connection with an award of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by the defendant's wrongful conduct. To achieve that purpose, compensatory damages are measured by the plaintiff's `out-of-pocket' actual loss.").
[18] In re J.P. Morgan Chase & Co., 2005 WL 1076069, at *12 ("[T]he court concludes that the injury alleged in the complaint is properly regarded as injury to the corporation, not to the class, and the damages, if any, flowing from that alleged breach of fiduciary duty belong to the corporation, not to the class. How then could the same directors ever be liable to pay actual compensatory damages to both the corporation and the class for the same injury? The answer ... is that they could not.") [footnote omitted].
[19] Id. at *13 (quoting Loudon v. Archer-Daniels-Midland Co., 700 A.2d 135, 141 (Del. 1997)) [emphasis added].
[20] Id. (citing Tri-Star, 634 A.2d at 333).
[21] Id.
[22] 700 A.2d 135 (Del.1997).
[23] Id. at 146-47.
[24] In re J.P.Morgan Chase & Co., 2005 WL 1076069, at *13 (quoting Tri-Star, 634 A.2d at 332 (finding that "the power of Tri-Star's minority shareholders to oppose the [later] merger was diluted to the point of virtual oblivion")).
[25] In re Paxson Commc'n Corp. S'holders Litig., 2001 Del. Ch. LEXIS 95, at *15 (Del. Ch. Jul. 10, 2001); In re Triarc Co. Inc., 791 A.2d 872, 877 (Del.Ch.2001); Turner v. Bernstein, 1999 WL 66532, 1999 Del. Ch. LEXIS 18, at *44-45 (Del. Ch. Feb. 9, 1999).
[26] In re Paxson, 2001 Del. Ch. LEXIS 95, at *15. In Turner v. Bernstein, quoted with approval by the Court in Paxson, the Court of Chancery interpreted Tri-Star as holding that a claim of stock dilution and a corresponding reduction in a stockholder's voting power states a direct claim:

... only in transactions where a significant stockholder sells its assets to the corporation in exchange for the corporation's stock, and influences the transaction terms so that the result is (i) a decrease (or `dilution') of the asset value and voting power of the stock held by the public stockholders and (ii) a corresponding increase (or benefit) to the shares held by the significant stockholder.
1999 Del. Ch. LEXIS 18, at *44-45.
[27] 722 A.2d 5 (Del. 1998).
[28] Id. at 12 [footnote 27 in original text].
[29] Id. (quoting Loudon, 700 A.2d at 142).
[30] 745 A.2d 902 (Del.Ch.1999)
[31] Id. at 918 (expressing the view that:

Malone's statement that causation and actual quantifiable damages are not elements of a claim for breach of the fiduciary duty of disclosure, and, more significantly, its citations in support of that statement, constitute a retreat to Tri-Star's per se rule of damages for all violations of the fiduciary duty of disclosure.
[emphasis in original]).
[32] Loudon, 700 A.2d at 142 [emphasis added] [internal footnote omitted].
[33] That conclusion is equally applicable to O'Reilly, insofar as that decision expresses a view that is inconsistent with our clarification in this Opinion of Malone, and of Malone's impact on the nominal damages rule articulated in Loudon.