**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEANNE M. CALAMORE,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>JUNIPER NETWORKS INC; SCOTT KRIENS; PRADEEP SINDHU; ROBERT M. CALDERONI; KENNETH GOLDMAN; WILLIAM R. HEARST, III; KENNETH LEVY; FRANK MARSHALL; STRATTON SCLAVOS; WILLIAM R. STENSRUD,<br><br>        Defendants - Appellees. | No. 08-17052<br><br>D.C. No. 5:07-cv-01772-JW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted October 7, 2009
San Francisco, California

Before: THOMPSON and THOMAS, Circuit Judges, and ALDRICH,[**] District
Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Ann Aldrich, Senior United States District Judge for
the Northern District of Ohio, sitting by designation.

Plaintiff-appellant Calamore appeals the district court's dismissal of her amended complaint without leave to amend. Calamore alleged Juniper Networks Inc. issued a false and misleading proxy solicitation to obtain shareholder approval for a stock option plan ("2006 Plan") in violation of § 14(a) of the Securities Exchange Act and Securities and Exchange Commission Rule 14a-9, in relation to its descriptions of past stock plans. The district court dismissed the complaint, concluding that Calamore's claim was derivative, not direct, under Delaware law and, thus, could not be brought without a pre-suit demand on Juniper's board of directors. Dismissal was with prejudice. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## DISCUSSION

### I. Nature of Calamore's § 14(a) Claim

We review *de novo* the dismissal of a direct claim on the ground that it should have been asserted derivatively. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 & n.1 (9th Cir. 1987). The characterization of a claim as direct or derivative is governed by the law of the state of incorporation. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). Juniper is a Delaware corporation, and thus, Delaware law applies.

2

Calamore alleges the proxy solicitation "frustrated the free exercise of Juniper shareholders' voting rights." As explained in *New York City Employees' Retirement System v. Jobs*, a claim that shareholders were deprived of the right to a fully informed vote is direct under state law. No. 08-16488, slip op. (9th Cir. 2009) (applying Delaware case law). Thus, Calamore's claim is direct.

## II.   Failure to Plead a Type of Relief that Can Be Granted

Although the district court dismissed Calamore's claim as derivative, we may affirm the district court's holding on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

Calamore seeks to void the 2006 shareholder vote, cancel the 2006 Plan and all awards issued thereunder, and prohibit payment of replacement consideration for cancelled awards.

Direct proxy disclosure claims, if made promptly, may support equitable relief such as an order to amend a proxy solicitation and require a re-vote. *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 825 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006). However, when "the 'eggs' have been irretrievably 'scrambled[,]' . . . there is no possibility of effective equitable relief." *Id.* (referring to a claim's status one year after a corporate merger). Furthermore, direct disclosure claims may be dismissed where a shareholder seeks a recovery

3

owed to the corporation. *J.P. Morgan*, 906 A.2d 766, 772-74 (Del. 2006) (affirming dismissal for failure to state a claim because plaintiffs were "conflating" their direct claim with relief "flowing from the corporation's separate and distinct underlying derivative claim for waste").

Calamore failed to request a type of relief that can be granted. The only requested relief that logically and directly addresses her alleged harm is voiding the vote. Calamore, however, did not file this action until nearly a year after the complained-of vote, even though, just four days after the vote, Juniper announced that its stock option practices were under investigation.[1] Calamore's delay allowed the "eggs" to be "irretrievably scrambled," especially considering that, by the time of filing, Juniper had issued millions of options to thousands of employees under the Plan. Furthermore, even if other remedies "flow naturally" from the avoidance of the vote, these remedies are unavailable because they impermissibly "conflate" Calamore's direct claim with a derivative claim. Calamore requests no remedy that the court can provide, and thus her claim must be dismissed.

## III. Leave to Amend

---

[1] The vote occurred on May 18, 2006. On May 22, Juniper announced the U.S. Attorney for the Eastern District of New York sought information concerning Juniper's granting of stock options. On March 28, 2007, Calamore filed her initial complaint.

4

We review a denial of leave to amend for abuse of discretion. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008). Although district courts should "freely give leave [to amend] when justice so requires," where amendment is futile, leave may be denied. Fed. R. Civ. P. 15(a)(2); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

In seeking leave to amend her complaint, Calamore states that she intends to maintain her action as a direct action, and would revise her complaint to request an appropriate remedy. Calamore suggests a new vote with a corrected proxy statement to adopt or confirm the adoption of the 2006 Plan.

A direct proxy disclosure claim cannot be stated where the relief sought is unlikely to have any effect. In *In re Tyson Foods, Inc.*, the court considered whether shareholder plaintiffs could seek an order to void a shareholder election of directors. 919 A.2d 563, 602 & n.113 (Del. Ch. 2007). The court stated that such equitable relief would be inappropriate because it was highly unlikely that a new election of board members would have a different result. *Id.* at 602 n.113. The board had survived two subsequent elections without allegations of impropriety, so overturning the elections would have "no real effect, as it is beyond this Court's power to insist that new directors travel backwards in time a number of years to take up their posts." *Id.*

5

In the present case, Calamore also failed to show that a corrected proxy solicitation and new vote would likely have any effect on the 2006 Plan. A corrected proxy solicitation would have no change in language regarding the 2006 Plan. At best, a corrected solicitation would explain that backdating occurred under prior plans. The backdating, however, is already public knowledge and the 2006 Plan has survived three annual shareholder meetings since its adoption.

Because Calamore's suggested relief is unlikely to produce a different result, we affirm the district court's denial of leave to amend.

**AFFIRMED**.