**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0493n.06

Case No. 19-1351

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Aug 21, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HENKEL OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CRAIG M. BELL; KNIGHT CAPITAL | ) | MICHIGAN |
| PARTNERS CORP., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges**

**JOHN K. BUSH, Circuit Judge.** Henkel of America ("Henkel") appeals the grant of summary judgment in favor of Craig Bell and Knight Capital Partners Corporation ("KCP") arising out of Bell's alleged breaches of his employment contract and fiduciary duties. According to Henkel, Bell breached his contractual and fiduciary obligations by playing both sides of a proposed sublicensing agreement between Henkel and KCP that culminated when Bell left Henkel to join KCP as an executive shortly before the deal fell through.

The district court granted summary judgment on the ground that Henkel failed to introduce evidence of damages proximately caused by Bell's conduct. Because damages are not an element of a claim for breach of fiduciary duty under applicable Delaware law, and because Henkel has introduced sufficient evidence of some entitlement to a remedy that satisfies the minimal

evidentiary burden that applies to such claims, we **REVERSE** as to that count. We otherwise agree with the district court and therefore **AFFIRM** as to all other counts.

**I.**

Bell was an employee of Henkel's wholly owned subsidiary, Henkel Corporation, where, from 2010 until January 2015, he served as Vice President of Marketing & Technical Services for Henkel's Adhesive Technologies business unit in North America. That role entitled Bell to a salary of $165,000 as well as participation in Henkel's Executive Financial Planning program, its Executive Health Program, a Deferred Compensation plan, and other benefits. Bell also was eligible for incentive-based bonuses, and he received such a bonus—in the amount of $142,000— for his work in 2014 (his last year as a Henkel employee). Because of his position, Bell had access to Henkel's confidential information, including financial and strategic plans.

As a result of this access, and in exchange for his salary and benefits, Bell owed duties not to engage in conflicts of interest or disclose confidential information, as required by his employment contract, under which he was to "abide by any and all policies and procedures adopted by the [c]ompany." R. 40-2 at PageID 958. Henkel's Code of Conduct, in turn, provides that "[w]e demand of ourselves, and those with whom we associate, the highest ethical standards." R. 40-3 at PageID 989. It goes on to state: "all [Henkel] employees should avoid situations that may lead to a conflict between their personal interests and those of Henkel," and directs that Henkel employees "act in the best interests of Henkel to the exclusion of any personal advantage" during contacts with customers and competitors. *Id.* The Code of Conduct also prohibits "[t]he communication of confidential internal information . . . to unauthorized personnel either inside or outside Henkel," *id.* at PageID 1003, and requires that any conflict of interest, or potential for conflict of interest, be disclosed, *id.* at PageID 1015. Such conflicts of interest include "[a] second

job providing services to or consulting with organizations doing business with or directly competing against Henkel . . . . Activities or engagements of this kind would never be permissible if such work or services were for a company you interact with as part of your job." *Id.*

To ensure compliance with this Code of Conduct, and as a condition of his employment agreement, Bell signed a Non-Solicitation and Non-Competition Agreement and a Nondisclosure and Invention Assignment Agreement. The latter contract required that Bell "use [his] best efforts . . . to not engage in outside employment or business interests that detract from [his] performance for [Henkel], or that create an actual or potential conflict of interest." R. 40-2 at PageID 964. It further prohibited Bell from "disclos[ing], utiliz[ing], or authoriz[ing] any disclosure of Confidential Information," which includes "any and all information, . . . having independent economic value to [Henkel] that is not generally known to, and not readily ascertainable by proper means by a person who can obtain economic value from its disclosure or use." *Id.* at PageID 964–65.

Prior to his resignation from Henkel in January 2015, Bell was considered to be a good employee. He had received no reprimands, warnings, criticisms, or complaints for his performance in his last year on the job, 2014. During that year Bell had maintained a heavy workload and had been required to travel frequently on behalf of Henkel.

But, Bell's job at Henkel was not Bell's only work concern in 2014. In fact, Bell wore two work hats, and one of them was not Henkel's. That is what led to this lawsuit.

The dispute centers around a proposed distribution agreement between Henkel and KCP that originated in early 2014 and fell apart shortly after Bell resigned from Henkel to become KCP's Chief Operating Officer. Bell was a longtime personal friend of KCP's founder and CEO, Fadi Nona, whom Bell introduced to his Henkel colleagues sometime in late 2013 or early 2014

to facilitate a sublicensing agreement for technology used to clean oil and gas refineries.[1]  Bell "coached" Nona and other KCP employees in how to communicate and negotiate with Henkel in an attempt to foster the transaction.   Henkel officials knew that Bell had a personal friendship with Nona and that he had made the introduction that led to the proposed transaction.

At some point during negotiations over the sublicensing agreement, Bell took on more responsibilities on the KCP side of the deal.  By March 2014, Bell was communicating with KCP using a personal, rather than his Henkel, email address—"sidecheese@gmail.com."  From this personal email address, Bell discussed with Nona the possibility of Bell's "leav[ing] Henkel [to] come work with [KCP]," and Bell provided Nona with a document titled "KCP License Proposal to Henkel," telling her "[o]bviously this can not [sic] have come from me."  R. 40-6 at PageID 1041.  In August 2014—three months before his resignation—Bell began conducting business using a KCP email address and a signature block identifying him as KCP's COO.  A series of emails between Bell and KCP employees suggests that Bell and KCP were aware that Bell's working for KCP could be problematic.[2]

At some point while he was employed by Henkel, Bell disclosed a confidential Henkel project called "Project King" to KCP, potentially as an example of his prior work.  When another party to Project King discovered that Bell had disclosed this information, Henkel spent several thousand dollars on legal fees to rehabilitate the relationship with the third party.  Henkel also suggests that Bell used proprietary information to prepare the presentation he provided to Nona

---

[1] Bell stated in his declaration that the introduction occurred in late 2013, while the Complaint alleges that KCP approached Henkel in February 2014.

[2] On September 24, 2014, Bell emailed Nona and other KCP employees, "[h]ave a good night everyone, Job #1 starts in 2 min!"  R. 40-14 at PageID 1133.  Lawyer Melvin Babi responded, "Lol Craig, I wish I was getting paid by the hour or better yet getting a comfy pay check every 2 weeks from Henkel.  And don't worry your [sic] not a convict in my eyes."  *Id.*

with the disclaimer that it "can not [sic] have come from me [(Bell)]." *See* R. 40-6 at PageID 1041; R. 40-7 at PageID 1045–48.

Bell's role ultimately shifted from Henkel employee to KCP executive when he resigned from Henkel and took the COO position at KCP on November 5, 2014. Bell has continued to serve in this capacity throughout this litigation. He had been set to receive an 80 percent increase in salary upon his transition to KCP, as well as an additional $250,000 bonus upon completion of the deal between Henkel and KCP. However, because the deal was never consummated, KCP never made any money and no one (including Bell) was compensated for his role at KCP.

The parties now dispute the value of the failed deal. In the complaint, Henkel alleges that the deal was "worthless" to Henkel, and that Bell's double-dealing led Henkel to pursue the deal for far longer than it otherwise would have. Specifically, Henkel argues that it became clear that the deal had no value once it discovered that, contrary to KCP's representations during negotiations, KCP did not possess licensing rights to certain technology that Henkel considered to be essential to the transaction. In contrast, Bell and KCP point to various internal Henkel documents and argue that the proposed deal would have been massively profitable for Henkel. They also note that Henkel continued to pursue a similar project after the deal with KCP fell through.

KCP ultimately sued Henkel KGaA, the parent company of both Henkel Corporation and Henkel, over the failed deal. *See Knight Capital Partners v. Henkel AG & Co.*, 930 F.3d 775 (6th Cir. 2019).[3] It was during discovery in that litigation that Henkel became aware of the scope of Bell's work for KCP before his resignation.

---

[3] This court's opinion in *Knight Capital Partners* was issued July 16, 2019, during briefing in the present appeal.

## II.

Henkel brought suit against Bell and KCP, claiming that Bell breached his contractual and fiduciary obligations by moonlighting at KCP prior to his resignation. The complaint alleged nine counts. Of those, six were against Bell: (1) breach of the noncompetition agreement (Count I); (2) breach of the nondisclosure agreements (Count II); (3) breach of the prohibition on disclosing confidential information (Count III); (4) breach of the prohibition on outside employment comprising any conflict of interest (Count IV); (5) breach of the fiduciary duty of candor and loyalty (Count V); and (6) unjust enrichment (Count IX). Three claims were against KCP: (1) tortious interference with the contract of employment between Henkel and Bell (Count VI); (2) aiding and abetting the breaches of the nondisclosure and noncompetition provisions (Count VII); and (3) aiding and abetting the breach of fiduciary duty (Count VIII).

Bell and KCP moved for partial summary judgment, raising arguments as to all counts except Count V. They argued primarily that Henkel failed to prove that it suffered any harm because any alleged damages were incurred either by its wholly owned subsidiary and Bell's employer, Henkel Corporation, or else its parent company, Henkel KGaA.

The district court granted the partial summary judgment requested by Bell and KCP. *See Henkel of Am., Inc. v. Bell*, No. 17-13909, 2018 WL 6604267, at *1 (E.D. Mich. Dec. 17, 2018). It held that Henkel failed to introduce evidence that Bell breached the nondisclosure agreement (Counts II and II) and the noncompetition agreement (Count I). *See id.* at *7–8. The district court then held that, although Henkel had introduced evidence that Bell breached the contractual prohibition on conflict of interest (Count IV), it failed to introduce evidence of any damages. *See id.* at *8–10. The only potential damages identified by Henkel were Bell's salary and bonuses and,

the district court explained, employers generally cannot sue to disgorge ordinary compensation of a former employee. *See id.*

Relying on three district court cases, the court explained that "as a general rule, the courts reject attempts by a plaintiff to disgorge ordinary compensation of a former employee" absent a showing that the allegedly improper conduct either (1) created a windfall for the employee, or (2) deprived the plaintiff of the benefit of the employee's performance of his usual duties. *Id.* at *8. The court determined that because Henkel failed to prove that Bell received any compensation for the misconduct, Bell and KCP were entitled to summary judgment on all of Henkel's breach-of-contract claims.[4] *Id.* The court then suggested that the failure to introduce evidence of damages likely doomed the only remaining claim—breach of fiduciary duty (Count V)—and ordered briefing on that issue. *See id.* at *10–11. In this supplemental briefing, Henkel argued (1) that it had introduced evidence of damages because it had paid Bell a discretionary bonus to which he was not entitled and because Henkel incurred several thousands of dollars in legal fees after Bell disclosed confidential information, and (2) that it was entitled to proceed to trial on nominal damages in any event. The court granted summary judgment as to this final count for largely the same reasons as the breach-of-contract claim. *See Henkel of Am., Inc. v. Bell*, No. 17-13909, 2019 WL 1002468, at *1 (E.D. Mich. Feb. 28, 2019). Henkel timely appealed.

### III.

"We review a district court's grant of summary judgment de novo." *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (internal quotations and citation omitted). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of

---

[4] The district court appears to have interpreted Count VIII as aiding and abetting a breach of contract rather than breach of fiduciary duty.

material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)). But, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.

On appeal, Henkel contends that the district court erred in finding that it had not introduced evidence of damages. Specifically, Henkel contends that it has proof of the following categories of damages: (1) Bell's salary and bonuses; (2) compensation for the time and expense spent salvaging the relationship with the third party to Project King and further for the time and expense spent unnecessarily pursuing the Henkel-KCP deal; and (3) nominal damages.

Bell and KCP argue that Henkel, the party in this suit, did not incur any damages because Bell's salary and benefits were paid by Henkel Corp., its wholly-owned subsidiary, and the Henkel-KCP deal was pursued by Henkel Corp. and Henkel KGaA, Henkel's parent company.

### A.    Breach of Contract

The district court held that Henkel failed to introduce evidence of Bell's alleged breach as to the non-competition and non-disclosure claims, and Henkel did not appeal those rulings. Thus, the only breach of contract before the panel is the breach based on conflict of interest, and the only issue as to that breach is whether Henkel has introduced evidence of damages.

The parties agree that pursuant to a choice-of-law provision, Connecticut law governs the breach-of-contract claims. "[T]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Meadowbrook Ctr., Inc. v. Buchman*, 90 A.3d 219, 226 (Conn. App. Ct. 2014) (quoting *Pelletier v. Galske*, 936 A.2d 689, 692 (Conn. App. Ct. 2007)). "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." *Ambrogio v. Beaver Road Assocs.*, 836 A.2d 1183, 1187 (Conn. 2003) (quoting *W. Haven Sound Dev. Corp. v. City of W. Haven*, 514 A.2d 734, 742 (Conn. 1986)); *see Beckman v. Jalich Homes, Inc.*, 460 A.2d 488, 494 (Conn. 1983); *Lar-Rob Bus Corp. v. Town of Fairfield*, 365 A.2d 1086, 1091 (Conn. 1976); *Bachman v. Fortuna*, 141 A.2d 477, 478 (Conn. 1958); Restatement (Second), Contracts § 347 cmt. a ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.").

Connecticut courts have adopted the Restatement's approach and allow a nonbreaching party to recover two classes of damages to satisfy this expectation interest: "(1) direct damages, composed of the loss in value to him of the other party's performance caused by its failure or deficiency; plus, (2) any other loss, including incidental or consequential loss, caused by the breach." *Ambrogio*, 836 A.2d at 1187 (cleaned up). Recovery of these two types of losses will restore to the nonbreaching party the value of the other party's promise as well as any losses he would not have incurred had the other party performed—together, the benefit of the bargain.

Henkel does not claim any loss in the value of Bell's performance, and it appears that Bell ably carried out his employment duties other than his double-dealing incident to the Henkel-KCP deal. Instead, Henkel seeks to recover "incidental or consequential loss"—that is, the money spent salvaging the relationship with the third party to Project King, the time and expense of unnecessarily pursing the Henkel-KCP deal, and Bell's compensation.

"Traditionally, consequential damages include any loss that may fairly and reasonably be considered as arising naturally, i.e., according to the usual course of things, from such breach of contract itself." *Ambrogio*, 836 A.2d at 1187 (cleaned up) (quoting *W. Haven Sound Dev. Corp.*, 514 A.2d at 742 (in turn quoting *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854))). A common example of such consequential damages is the recovery of foreseeable lost profits. *See, e.g.*, *id.*; *W. Haven Sound Dev. Corp.*, 514 A.2d at 742. For example, *Ambrogio* involved a dispute between a dental surgeon and the contractor who had defectively installed the surgeon's office floor. 836 A.2d at 1184–85. The surgeon sued to recover lost profits resulting from the temporary closure of a surgical room to accommodate remedial construction. *Id.* The court held that such lost profits were available so long as the losses arose "directly from and as a natural consequence of the breach." *Id.* at 1187 (quoting *W. Haven Sound Dev. Corp.*, 514 A.2d 742). The award of profits lost during the closure would restore the surgeon to the position he would have been in had the floors been correctly installed and he had not needed to close the surgery room. *See id.* at 1187–89.

Applying these principles, we address each of Henkel's asserted damages.

### 1.    Bell's Compensation

Henkel argues that Bell's compensation—his salary and bonus—can be recovered as consequential damages because Bell would have been fired (and thus received no pay from

Henkel) had he disclosed that he was simultaneously working as a high-level KCP executive. We find this argument unconvincing because Bell's compensation was not a "loss[] caused by the breach." *Ambrogio*, 836 A.2d at 1187 (quoting Restatement (Second) Contracts § 347(b)); *see also W. Haven Sound Dev. Corp.*, 514 A.2d at 742 (explaining lost profits are available when the "loss arises directly from and as a natural consequence of the breach"). Henkel of course did not pay Bell to play both sides of the Henkel-KCP deal and possibly undermine its interests for personal gain; it paid him because of its contractual obligation to remunerate him in exchange for services (most of which he rendered). That Henkel would have terminated Bell does not change the analysis because there is no evidence that Henkel would not have needed to pay the same ~$300,000, or some similar amount, to someone else to perform Bell's employment duties.

Restoring to the nonbreaching party part of the consideration paid under the contract is simply not a measure of the party's expectation interest, of which consequential damages are a constituent part. Because the payment occurred as a result of a contractual obligation and not the breach, returning the compensation to Henkel would not restore it to the position it would have been in had Bell performed his contractual obligations; it would put Henkel in the position it would have been in had it terminated the contract and managed to complete the same tasks without hiring someone else.

Henkel all but acknowledges that the return of Bell's compensation is not an appropriate measure of contract damages because the Connecticut cases upon which it relies for this proposition involve breach of fiduciary duty, not breach of contract.[5] *See* Appellant's Br. at 21–

---

[5] To be sure, parties may in some circumstances recover a restitution interest for contract damages, which resembles an equitable claim and might permit a party to recover some or all of the consideration it had already paid pursuant to the contract. *See, e.g.*, *Bernstein v. Nemeyer*, 570 A.2d 164, 168–69 (Conn. 1990); *see also* Restatement (Second) Contracts §§ 371, 373. Under this approach, "[t]he objective is . . . to put the party *in breach* back in the position he would have been in if the contract had not been made." *Bernstein*, 570 A.2d at 18–69 (citation omitted). However, Henkel does not pursue its breach of contract claim on a theory of restitution interest, and it has not attempted to satisfy the requirements that it return to the breaching party any benefit received (here, Bell's provision of employment

22 (citing, *e.g.*, *Wall Sys., Inc. v. Pompa*, 154 A.3d 989 (Conn. 2017)). Seeing no difference between Bell's salary and his performance-based bonuses for purposes of Henkel's expectation interest, we find both insufficient to establish the element of damages.

### 2. Time and Expense on Project King and Henkel-KCP Deal

Henkel also contends that it has established concrete damages in the form of (1) the time and expense incurred in rehabilitating its relationship with "King" after it was discovered that Bell had disclosed confidential information about the project to KCP and (2) the time and expense spent pursuing the Henkel-KCP deal longer than it would have had it not been for Bell's conflict of interest.

Regardless of whether these costs were caused by the breach, they also do not establish damages on the part of Henkel. First, Henkel never raised these arguments in the summary judgment briefing for the breach of contract claim, *see* R. 40 at PageID 934–38, and they are therefore forfeited, *see United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009). Further, to prevail on a breach of contract claim under Connecticut law, "[p]roof of damages should be established with reasonable certainty and not speculatively and problematically." *Meadowbrook Ctr., Inc.*, 90 A.3d at 228 (quoting *Leisure Resort Tech., Inc. v. Trading Cove Assocs.*, 889 A.2d 785, 794 (Conn. 2006)). Thus, otherwise-proper consequential damages may not be awarded if they are too "speculative and remote." *Ambrogio*, 836 A.2d at 1187. The specificity of the evidence required should be determined based on the nature of the case. *See Meadowbrook Ctr.,*

---

services), *see Metcalfe v. Talarski*, 567 A.2d 1148, 1152–53 (Conn. 1989) ("The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides, and hence the general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in status quo." (quoting 17 Am.Jur.2d, Contracts § 512 p. 994)), or that the breach be a "material" or "total" breach, *see John T. Brady and Co. v. City of Stamford*, 599 A.2d 370, 377 (Conn. 1991) ("[T]he remedy in restitution is designed to prevent unjust enrichment of the party responsible for a material breach of an enforceable contract[.]"); *see also Bernstein*, 570 A.2d at 168–69 (similar); Restatement (Second) Contracts § 373(1) (explaining that restitution interest is available for "non-performance that gives rise to a claim for damages for total breach").

*Inc.*, 90 A.3d at 228 ("[E]vidence of such certainty as the nature of the case permits should be produced." (quoting *Doeltz v. Longshore, Inc.*, 13 A.2d 505, 507 (Conn. 1940)).

As it essentially acknowledged at oral argument, Henkel failed to introduce any evidence from which a factfinder could calculate these other categories of losses. The only specific evidence of losses arising out of the Project King disclosure is a declaration from Henkel's president that Henkel incurred "several thousand dollars" in fees. R. 49-2 at PageID 1383 ¶ 9. But legal fees usually are calculated with a great degree of specificity, closely catalogued, and generally correlated to very specific activities. So too with the additional time and expense spent pursuing the Henkel-KCP deal even after Bell became aware that KCP did not possess the relevant licensing rights. Other than describing these damages as "a substantial amount of time and resources," R. 40-19 at PageID 1175 ¶¶ 15:17–24, and that the damages consist of time spent "exploring the deal, due diligence that was conducted, including voice [sic] of the customer, activities, flights, hotel rooms, [and] travel expenses for certain meetings," R. 31-4 at PageID 692 ¶¶ 16:1–4, Henkel provides no way to calculate its alleged losses.

### 3. Nominal Damages

Henkel argues that even if it cannot establish actual damages, it is entitled to pursue its claim on the basis of nominal damages. It seeks to take the case to trial on that basis alone. Henkel never raised this argument in the district court, and it is therefore forfeited on appeal. *See Archibald*, 589 F.3d at 296.

Accordingly, we **AFFIRM** as to the breach of contract claim (Count IV).

*     *     *

The parties agree that the claims against KCP for tortious interference and aiding and abetting (Counts VI–VII) rise or fall with the contract claims against Bell. Therefore, we **AFFIRM** as to these counts as well.

### B.     Breach of Fiduciary Duty

The district court granted summary judgment on the breach of fiduciary claim solely on the basis that Henkel failed to produce evidence of any damages caused by the breach. Again, on appeal, Henkel presses three claims for damages: salary and benefits paid to Bell during the period of disloyalty, expenses incurred to resolve the fallout from Project King and those incurred pursuing the Henkel-KCP deal, and nominal damages. Bell and KCP again argue that Henkel cannot establish damages because it is the incorrect corporate entity, as all potential losses were suffered either by its parent company or else its wholly owned subsidiary. Bell and KCP further argue that Henkel's breach of fiduciary duty claim is barred by the economic loss doctrine.

### 1.     Choice of Law

Unlike the breach of contract claim, the parties dispute what law applies to the breach of fiduciary duty. Henkel contends that Delaware law applies because Delaware is its state of incorporation. In contrast, Bell and KCP contend that either Connecticut or Michigan law applies but seem to argue principally that Connecticut law governs.

Applying Michigan choice-of-law rules, the "internal affairs" doctrine requires application of the law of the state of incorporation which, here, is Delaware. "[T]he Michigan Business Corporation Act 'does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state.'" *Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d. 940, 947 (E.D. Mich. 2017) (quoting Mich. Comp. Laws § 450.2002(2)).

Whether an executive has breached his fiduciary duties is an internal affair of a corporation and, accordingly, the law of the state of incorporation will apply to claims arising from breaches of those duties. *See, e.g.*, *id.*; *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017) (same for limited liability company); *Dow Chem. Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 495501, at *11 (E.D. Mich. Feb. 20, 2008); Restatement (Second) Conflict of Laws § 302. Michigan statutes recognize that states have a strong interest in ordering the affairs of their respective corporations and codify their ability to do so. *See* Mich. Comp. Laws. § 450.2002(2).

We therefore apply Delaware law.[6]

### 2. Delaware Breach of Fiduciary Duty

### a. Legal Standard

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010); *see Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011) ("To establish liability for the breach of a fiduciary duty, a plaintiff must demonstrate that the defendant owed her a fiduciary duty and that the defendant breached it."); *Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*, C.A. No. 11802-VCL, 2018 WL 3326693, at *23 (Del. Ch. July 6, 2018) ("The equitable tort for breach of fiduciary duty has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty."); *McKenna v. Singer*, C.A. No. 11371–VCMR, 2017 WL 3500241, at *15 (Del. Ch. July 31, 2017) (similar). Delaware courts have distinguished this "equitable tort" from common law torts, which require not only a duty and breach but also "injury, and a causal connection between the breach and injury." *Basho Techs.*

---

[6] We note that Henkel would also prevail under Connecticut law because Connecticut agency law explicitly recognizes an employer's right to seek forfeiture of compensation paid to a disloyal employee regardless of whether the disloyalty injured the employer or unjustly enriched the employee. *See Wall Sys., Inc. v. Pompa*, 154 A.3d 989, 997 (Conn. 2017).

*Holdco B, LLC*, 2018 WL 3326693, at *22–23; *see In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 334 (Del. 1993) ("Although it is clear that claims for common law fraud, misrepresentation, or equitable fraud do require plaintiffs to show quantifiable damage, the issues before us relate to breach of fiduciary duty, not fraud. Recently we held that damages need not always be proven in that context." (citation omitted)), *overruled on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

Plaintiffs therefore do not need to allege or prove damages to establish a defendant's liability for breach of fiduciary duty under Delaware law. *See In re Fuqua Indus., Inc.*, No. Civ.A. 11974, 2005 WL 1138744, at *6 (Del. Ch. May 6, 2005) ("[T]he defendants' contention that the corporation did not suffer damages from [the alleged breach of fiduciary duty] is unavailing as plaintiffs need not demonstrate damages."); *Leslie v. Telephonics Office Techs., Inc.*, 1993 WL 547188, at *11 (Del. Ch. Dec. 30, 1993) ("[A] well pleaded claim for breach of fiduciary duty will survive a motion to dismiss, even in the absence of any allegation of damages flowing from the breach." (citing *In re Tri-Star Pictures, Inc.*, 634 A.2d 319)). If a court finds that the defendant has breached his fiduciary duties, but the court is unable to fashion an appropriate remedy, it may still award nominal damages. *See Ravenswood Inv. Co., L.P. v. Estate of Winmill*, C.A. No. 3730–VCS, C.A. No. 7048–VCS, 2018 WL 1410860, at *25 (Del. Ch. Mar. 21, 2018); *Basho Techs. Holdco B, LLC*, 2018 WL 3326693, at *24 ("A court may award nominal damages if a breach existed but does not warrant a meaningful remedy."); *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, C.A. No. 6546–VCL, 2014 WL 5192179, at *13 (Del. Ch. Oct. 10, 2014) (awarding nominal damages where court was unable to provide monetary relief.). In that situation, some courts have also exercised their discretion to award attorneys' fees and costs. *See William Penn P'ship v. Saliba*, 13 A.3d 749, 759 (Del. 2011) (affirming chancery court's award of attorneys'

fees when plaintiff established breach but could not prove damages); *Cline v. Grelock*, No. 4046–VCN, 2010 WL 761142, at *2–3 (Del. Ch. Mar. 2, 2010) (awarding costs).

Accordingly, we find that the district court erred in treating damages as an essential element of Henkel's claim and granting summary judgment on the basis that Henkel failed to introduce evidence of this element. *See In re Fuqua Indus., Inc.*, 2005 WL 1138744, at *6; *Leslie*, 1993 WL 547188, at *11; *see also In re Tri-Star Pictures, Inc.*, 634 A.2d at 333–34.[7]

Moreover, we find that that Henkel has satisfied the minimal evidentiary burden that applies to claims for breach of fiduciary duty to pursue some form of relief. "Although a claim for breach of fiduciary duty has only two formal elements, a plaintiff will not be awarded a meaningful remedy without additional showings that parallel the other elements of a traditional common law tort claim." *Basho Techs. Holdco B, LLC*, 2018 WL 3326693, at *24. The standards developed by the Delaware Supreme Court "require that a fiduciary not profit personally from [disloyal] conduct, and that the beneficiary not be harmed by such conduct." *Thorpe by Castleman v. CERBCO, Inc. (Thorpe II)*, 676 A.2d 436, 445 (Del. 1996); *see In re Tri-Star Pictures, Inc.*, 634 A.2d at 334; *Oberly v. Kirby*, 592 A.2d 445, 463 (Del. 1991); *see also Triton Const. Co., Inc. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *28 (Del. Ch. May 18, 2009) ("[O]nce disloyalty has been established, the standards evolved in the Delaware courts require that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct.").

---

[7] We acknowledge that some courts—none of them Delaware state courts—have treated damages and causation as elements of a claim for breach of fiduciary duty brought under Delaware law. *See In re Katy Indus., Inc.*, 590 B.R. 628, 640–41 (Bankr. D. Del. 2018), *rev'd in part on other grounds sub nom. In re KII Liquedating, Inc.*, 607 B.R. 398 (D. Del. 2019); *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 801–02 (W.D. Wis. 2017); *Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc.*, No. 08–2561–EFM., 2012 WL 4210462, at *12 (D. Kan. Sept. 19, 2012); *Huff Energy Fund, L.P. v. Longview Energy Co.*, 482 S.W.3d 184, 223 (Tex. Ct. App. 2015) (Chapa, J., dissenting). The Southern District of New York has suggested that it is an open question, but strongly indicated that damages are not an element. *Kimberlin v. Cena Corp.*, No. 96 CIV. 8704(SS), 1998 WL 603234, at *12 (S.D.N.Y. Sept. 11, 1998) (Sotomayor, J.) ("It would similarly seem to be a serious question whether proof of damages is essential to a fiduciary duty claim."). We believe the question is settled by the Delaware authority discussed *supra*.

Thus, to be entitled to a monetary remedy, the plaintiff must demonstrate something similar to damages—"harm to the beneficiary or, alternatively, the wrongful taking of a benefit by the fiduciary." *Basho Techs. Holdco B, LLC*, 2018 WL 3326693, at *24.

Additionally, to be entitled to monetary relief, a plaintiff must establish "a sufficiently convincing causal linkage" between the breach and the remedy sought. *Id.* Accordingly, the damages sought must be "logically and reasonably related to the harm or injury for which compensation is being awarded." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773 (Del. 2006); *see Lake Treasure Holdings, Ltd.*, 2014 WL 5192179, at *12 (quoting this passage).

"But as long as that connection exists, the law does not require certainty in the award of damages where a wrong has been proven and injury established." *In re Dole Food Co., Inc. Stockholder Litig.*, CONSOLIDATED C.A. No. 8703-VCL, CONSOLIDATED C.A. No. 9079-VCL, 2015 WL 5052214, at *44 (Del. Ch. Aug. 27, 2015) (cleaned up). "Where [a court] finds that a breach of fiduciary duty has occurred, the specificity and amount of evidence required from the Plaintiff on the issue of damages is minimal." *Encite LLC v. Soni*, No. 2476–VCG, 2011 WL 5920896, at *25 (Del. Ch. Nov. 28, 2011); *see Thorpe II*, 676 A.2d at 445 ("Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly."); *In re Dole Food Co.*, 2015 WL 5052214, at *44 (same). In assessing the available remedy, "[r]esponsible estimates that lack mathematical certainty are permissible so long as the court has a basis to make a responsible estimate of damages." *In re Fuqua Indus., Inc.*, 2005 WL 1138744, at *8 (quoting *Bomarko, Inc. v. Int'l Telecharge, Inc.,* 794 A.2d 1161, 1184 (Del. Ch. 1999) (in turn quoting *Red Sail Easter Ltd. P'rs, L.P. v. Radio City Music Hall Prods., Inc.*, No. 12036, 1992 WL 251380, at *7 (Del. Ch. Sept. 29, 1992))); *see also Milbank, Tweed, Hadley & McCloy v.*

*Boon*, 13 F.3d 537, 543 (2d Cir. 1994) ("[B]reaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages.").

Delaware courts will "refuse to award damages based on mere speculation or conjecture where a plaintiff fails to adequately prove damages." *Encite LLC*, 2011 WL 5920896, at *25 (internal quotations omitted) (quoting *Beard Research*, 8 A.3d at 613 (in turn quoting *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. 3718–VCP, 2010 WL 338219, at *23 (Del. Ch. Jan. 29, 2010))). But there is a "minimal [evidentiary] burden on plaintiffs who have proven a breach." *Id.* Accordingly, summary judgment will not be granted as to a claim for damages as long as the "record does not conclusively demonstrate" that the plaintiff could not demonstrate damages, and that the theory of damages is not "facially invalid." *Id.*; *accord Cline*, 2010 WL 761142, at *2 (declining to award damages following trial because any harm from defendant's dissolution of unprofitable LLC was "entirely speculative").

Here, as discussed below, the record does not "conclusively demonstrate" that Henkel would not be able to establish that it was harmed, or that Bell improperly benefitted, from Bell's alleged breach. *See Encite LLC*, 2011 WL 5920896, at *25. We address only the damages Henkel asserted in support of its claim for breach of fiduciary duty in the district court: Bell's discretionary bonuses and the attorneys' fees spent rehabilitating Henkel's relationship with a third party after Bell disclosed confidential information about Project King.

### b. Bell's Compensation

Relying on a trio of district court cases, the court below held as a general matter that employers cannot disgorge ordinary employee compensation absent evidence that the misconduct harmed the employer or that the employee was compensated for the misconduct. However, a

number of states do recognize an employer's right to disgorge compensation paid to an agent during a period of disloyalty, either under the "faithless servant" doctrine or just under ordinary principles of agency. *See, e.g.*, *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 499–500 (Colo. 1989) (en banc); *Wall Sys., Inc. v. Pompa*, 154 A.3d 989, 1000 (Conn. 2017); *Astra USA, Inc. v. Bildman, et al.*, 914 N.E.2d 36, 46–52 (Mass. 2009) (applying New York law); *Kaye v. Rosefielde*, 121 A.3d 862, 870–71 (N.J. 2015); *see also* Charles A. Sullivan, *Mastering the Faithless Servant?: Reconciling Employment Law, Contract Law, and Fiduciary Duty*, 2011 Wis. L. Rev. 777, 806–13 (2011) (collecting cases). Under that approach, and assuming Henkel could establish the elements of its claim, Henkel would be permitted to recover all compensation paid to Bell during the period of alleged misconduct.[8]

Although Delaware has not adopted the faithless servant doctrine, *see Technicorp Int'l II, Inc. v. Johnston*, No. Civ.A. 15084, 2000 WL 713750, at *53 (Del. Ch. May 31, 2000), multiple cases have recognized that disgorgement of compensation may be an appropriate remedy for a breach of fiduciary duty. *See Citron v. Merritt-Chapman & Scott Corp.*, 407 A.2d 1040, 1045 (Del. 1979); *Triton Const. Co., Inc.*, 2009 WL 1387115, at *28; *Julian v. E. States Const. Serv., Inc.*, No. 1982–VCP, 2008 WL 2673300, at *19 (Del. Ch. July 8, 2008); *see also Hollinger Int'l, Inc. v. Hollinger Inc.*, 04 C 0698, 2005 WL 589000, at *29 n.25 (N.D. Ill. Mar. 11, 2005)

---

[8] Bell contends that Henkel forfeited this argument by not raising it before the district court. True enough, Henkel never cited any of these cases or pursued a theory of damages based on the faithless servant doctrine in its supplemental briefing in response to the district court's order. However, Henkel did assert that under Delaware breach of fiduciary duty law, it could recover discretionary bonuses paid to Bell. Henkel therefore clearly argued that it was entitled to recover a portion of Bell's compensation under Delaware law. We therefore consider that argument here. The out-of-jurisdiction law is generally beside the point in any event. As the Supreme Court has recently acknowledged, the concept of disgorgement has "protean character," *Liu v. Securities and Exchange Comm'n*, 140 S. Ct. 1936, 1943 (2020) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014)), and one justice has gone so far as to suggest that it lacks historical pedigree, *see id.* at 1951 (Thomas, J., dissenting). It is therefore unsurprising that such a remedy has not developed uniformly between the states.

(recognizing right to disgorge compensation under Delaware law); *Claire's Stores, Inc. v. Abrams*, No. 86 C 9851, 1989 WL 134959, at *7–8 (N.D. Ill. Oct. 16, 1989) (discussing scope of Delaware disgorgement); *Scrushy v. Tucker*, 70 So. 3d 289, 306 (Ala. 2011) (same). The Delaware Supreme Court has explained that such disgorgement or forfeiture of compensation must be "governed by the circumstances in each particular case." *Citron*, 407 A.2d at 1045.

As indicated, "Delaware law prohibits fiduciaries from profiting personally from disloyal acts that constitute fiduciary breaches." *Triton Const. Co., Inc.*, 2009 WL 1387115, at *28 (citing *Oberly*, 592 A.2d at 463). Accordingly, to "discourage disloyalty by fiduciaries," *id.* (citing *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939)), courts may remedy a breach of fiduciary duty by ordering disgorgement of compensation obtained by the disloyal act.

*Triton Construction* is instructive. In similar facts to these, the plaintiff's employee was moonlighting for a competitor and simultaneously earning a salary from both companies. *See id.* at *4. The employee made approximately $181,000 from the plaintiff during the period of disloyalty, and approximately $21,000 from the competitor. *Id.* The court found that the defendant violated his fiduciary duties and ordered disgorgement of the $21,000. *See id.* at *28. The court did not order disgorgement of the $181,000 received from the plaintiff employer, however, therefore limiting the remedy to the actual profit made as a result of the unfaithful conduct and allowing the employee to retain the compensation he would have earned with or without the misconduct. *See id.*

Similarly, in *Julian*, the court held that the defendants violated their fiduciary duties by awarding themselves disproportionately large bonuses. *See* 2008 WL 2673300, at *19. As an equitable remedy, the court ordered disgorgement of the bonuses themselves—again, the measure of the profit received as a result of the breach. *See id.*; *accord Technicorp Int'l II, Inc.*, 2000 WL

21

713750, at *53 ("[Courts applying Delaware law] have implicitly recognized that even where a corporate fiduciary's breach of the duty of loyalty results in his being stripped of all profit flowing from the breach, it is appropriate to offset against the corporation's recovery an amount that represents reasonable compensation to the fiduciary for services legitimately performed.").

It is uncontested that the bonuses Bell received were discretionary. The parties also acknowledge that Bell spent at least some portion of his working time facilitating the Henkel-KCP deal, and further that the deal was at one time thought to be a valuable transaction for Henkel. Although there is no evidence in the record about how Bell's discretionary bonus was calculated, we cannot at this time say that the record "conclusively demonstrates," *Encite LLC*, 2011 WL 5920896, at *25, that no portion of Bell's bonus was paid for his work on the failed deal. We therefore hold that Henkel can pursue this aspect of its claim on remand.

### c.      Project King Disclosure

As discussed, Henkel seeks to recover as damages the attorneys' fees paid to rehabilitate its relationship with a third party after the third party became aware that Bell had disclosed confidential information about Project King. The only evidence of the resulting losses is a declaration from Henkel's president that Henkel incurred "several thousand dollars" in fees. R. 49-2 at PageID 1383 ¶ 9.

This is sufficient to satisfy the minimal evidentiary burden that applies to the breach of fiduciary duty claim. Specifically, the declaration is sufficient at this stage as evidence that recovering the attorneys' fees is "logically and reasonably related to the [alleged] harm or injury for which compensation is [sought]." *In re J.P. Morgan Chase & Co.*, 906 A.2d at 773. And although the declaration's simple statement of "several thousand dollars" is sparse at best, we think it is more than the type of "speculation or conjecture," *Encite LLC*, 2011 WL 5920896, at *25, that

would warrant summary judgment. *See In re Dole Food Co.*, 2015 WL 5052214, at \*44 ("Responsible estimates that lack mathematical certainty are permissible so long as the court has a basis to make a responsible estimate of damages." (cleaned up)).

As Delaware courts have explained, when a breach of fiduciary duty is found, "the Court of Chancery may fashion any form of equitable and monetary relief as may be appropriate." *Julian*, 2008 WL 2673300, at \*19; *see William Penn P'ship*, 13 A.3d at 758 ("[T]he Court of Chancery has broad discretionary power to fashion appropriate equitable relief."). We therefore leave to the district court the task of determining what, if any, other remedies may be available if Henkel satisfied the elements of its claim.

### d.    Plaintiff's Corporate Identity

We now reach Bell's additional argument that Henkel of America is the wrong corporate entity to have brought suit. Bell contends that his compensation was paid by Henkel's subsidiary, Henkel Corporation, while the contested attorney's fees were paid by Henkel's parent company, Henkel KGaA. We do not find this argument persuasive.

Under Delaware law for breach of fiduciary duty, the remedy sought must be "logically and reasonably related to the [alleged] harm or injury for which compensation is [to be] awarded." *In re J.P. Morgan Chase & Co.*, 906 A.2d at 773. Given the broad discretion vested in chancery courts to fashion appropriate relief, *see, e.g.*, *William Penn P'ship*, 13 A.3d at 758, we have little trouble finding that recovery of money paid by a parent company or wholly owned subsidiary is sufficiently related to the alleged breach to survive summary judgment. Moreover, cutting off Henkel's ability to pursue the claim would contravene the purpose of such claims to "remov[e] all temptation, extinguish[ing] all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation." *Guth*, 5 A.2d at 510. We therefore reject this argument.

23

### e.　　The Economic Loss Doctrine

Bell also contends that the breach of fiduciary duty claim is barred by the economic loss doctrine. We disagree. The economic loss doctrine, which prohibits parties from recovering damages in negligence and other tort claims for harms that are purely economic and properly addressed through contract law, has no application here.

"The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself . . . and, the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992). The doctrine serves to preserve the "distinct functions served by tort law and contract law," *id.* (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982)), and "[t]he concept of duty is at the heart of the distinction drawn by the economic loss doctrine," *id.* (quoting *2314 Lincoln Park W. Condo. Assoc. v. Mann, Gin, Ebel, & Frazier, Ltd., et al.*, 555 N.E.2d 346, 351 (Ill. 1990)). The economic loss rule does not apply to the breach of fiduciary duty claims here because any fiduciary duties Bell may have breached would be those arising out of his status as a high-ranking executive employee, not his contractual obligations. *Cf. McKenna v. Terminex Int'l Co.*, 04C-02-022RBY, 2006 WL 1229674, at *3 (Del. Super. Ct. Mar. 13, 2006) (economic loss doctrine barred negligence claim against exterminator for termite damage because "[p]laintiff ha[d] not claimed breach of a duty by Defendants independent of the contractual obligations"). Moreover, the breach-of-fiduciary-duty claim is not duplicative of the breach-of-contract claim because different remedies may be available if Henkel can establish its claim for breach of fiduciary duty. *See In re Mobilactive Media, LLC*, C.A. No. 5725–VCP, 2013 WL 297950, at *20 n.219 (Del. Ch. Jan. 25, 2013) (allowing claims for breach of contract and breach of fiduciary duty to proceed because they involved different remedies); *see also Stewart v. BF Bolthouse Holdco, LLC*, C.A. No. 8119–VCP,

2013 WL 5210220, at *14 (Del. Ch. Aug. 30, 2013) (finding claim for breach of fiduciary duty duplicative of claim for breach of contract because the same remedies were available for the breach of contract).

*  *  *

We therefore **REVERSE** the district court's grant of summary judgment as to the breach of fiduciary duty claim (Count V).

### C.    Aiding and Abetting Breach of Fiduciary Duty

We next turn to Henkel's claim against KCP for aiding and abetting Bell's breach of fiduciary duty (Count VIII). The district court seems to have interpreted this as a claim for aiding and abetting a breach of contract and granted summary judgment on this claim in the first order granting summary judgment on the breach of contract claims.

Henkel appeals the grant of summary judgment on this claim, arguing that the claim "rise[s] or fall[s]" with the claims against Bell. Appellant's Br. at 34.

However, unlike a claim for breach of fiduciary duty, a claim for aiding and abetting a breach of fiduciary duty under Delaware law does require damages and proximate causation as elements of the claim. Specifically, "the elements of aiding and abetting breaches of fiduciary duty [are]: (i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach." *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)); *see Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (setting out these elements); *McKenna v. Singer*, No. 11371–VCMR, 2017 WL 3500241, at *20 (Del. Ch. July 31, 2017) (same).

Thus, "a plaintiff must show that 'damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary.'" *Taita Chem. Co., Ltd. v. Westlake Styrene, LP*,

25

351 F.3d 663, 670–71 (5th Cir. 2003) (quoting *Gotham Partners,* 817 A.2d at 172). And further, "the aider and abettor . . . must act with *scienter*." *RBC Capital Mkts., LLC*, 129 A.3d at 862. Thus, "the plaintiff must demonstrate that the aider and abettor had 'actual or constructive knowledge that their conduct was legally improper.'" *Id.* (quoting *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008)). Because Henkel fails to raise any arguments as to the additional elements of its aiding and abetting claim, we **AFFIRM** the grant of summary judgment as to that count.

### D. Unjust Enrichment

In a footnote, Henkel contends that the district court erred in dismissing its claim for unjust enrichment. We decline to consider this argument. For one thing, Henkel forfeited any argument as to this claim by addressing it only in a footnote at the end of its brief. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation mark omitted)). Moreover, although Henkel argues that the district court erred in finding that it failed to establish damages, Henkel says nothing of the district court's primary holding on the unjust enrichment claim: the existence of an express contract between the parties covering the entire subject of the dispute foreclosed any ability to recover in unjust enrichment. Although Henkel addresses this issue in its reply brief, that is not sufficient to present the issue on appeal. *See Tranter v. Orick*, 460 F. App'x 513, 515–16 (6th Cir. 2012) (per curiam) ("[A]n appellant waives an issue when he fails to present it in his initial briefs." (quoting *LoCoco v. Med. Sav. Ins. Co.*, 530 F.3d 442, 451 (6th Cir. 2008)).

We therefore **AFFIRM** as to this count (Count IX).

26

**V.**

For all these reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.